UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RONALD  C.  HOOD,  JR.  aka
Erika Denise Hood

      Plaintiff,

v.                  Case No: 2:12-cv-637-FtM-29DNF

DEPARTMENT OF CHILDREN AND
FAMILIES, DAVID E. WILKINS,
Secretary of DCF, and
DANIEL MONTALDI, SVPP
Administrator,

      Defendants.

_____/

**OPINION AND ORDER**

Plaintiff Ronald C. Hood ("Plaintiff") initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 (Doc. 1).[1]  This matter is presently before the Court upon review of the motion to dismiss filed by Defendants Department of Children and Families ("DCF"), David E. Wilkins, Secretary of DCF, and Daniel Montaldi,

---

[1] Plaintiff filed this complaint as "Ronald C. Hood, Jr.," but periodically refers to himself as Erika Denise Hood and uses feminine pronouns when referring to himself in the complaint. In the motion to dismiss, the defendants use masculine pronouns to refer to Plaintiff (Doc. 24).  Additionally, in the numerous exhibits attached to the complaint, Plaintiff is referred to as a male.  Finally, it is the understanding of this Court that Plaintiff has not undergone sex reassignment surgery. Accordingly, in order to remain consistent with the majority of pleadings and documents before this Court and to avoid confusion, this Order will continue to use masculine pronouns when referring to Plaintiff.

Administrator of the Sexual Violence Prevention Program ("SVPP")

at DCF (collectively, "Defendants") (Doc. 24, filed July 3, 2013).

Plaintiff has filed a response to the motion to dismiss (Doc. 27),

and the motion is now ripe for review.

For the reasons set forth in this Order, Defendants' motion

to dismiss is **GRANTED IN PART AND DENIED IN PART**.

## I.   Background

At the time he filed this *pro se* complaint on November 1,

2012, Plaintiff was a resident at the Florida Civil Commitment

Center ("FCCC") in Arcadia, Florida (Doc. 1).[2]  Plaintiff alleges

---

[2] The Florida legislature enacted the Sexually Violent
Predators Act, Florida Statute §§ 394.910-394.913, by which a
person determined to be a sexually violent predator is required to
be housed in a secure facility "for control, care, and treatment
until such time as the person's mental abnormality or personality
disorder has so changed that it is safe for the person to be at
large." Fla. Stat. § 394.917(2).  The Act was promulgated for the
dual purposes "of providing mental health treatment to sexually
violent predators and protecting the public from these
individuals." Westerheide v. State, 831 So. 2d 93, 112 (Fla.
2002); Kansas v. Hendricks, 521 U.S. 346 (1997)(holding that the
Kansas Sexually Violent Predator Act did not establish criminal
proceedings, and involuntary confinement pursuant to the Act was
not punitive).  Civil commitment under the Act involves several
steps.  First, the Act requires a mental evaluation of any person
who has committed a sexually violent offense and is scheduled for
release from prison or involuntary confinement.  See generally
Fla. Stat. § 394.913.  The evaluation is conducted by a multi-
disciplinary team of mental health professionals who must
determine whether the individual meets the definition of a
"sexually violent predator."  After the evaluation, the state
attorney may file a petition with the circuit court alleging that
the individual is a sexually violent predator subject to civil
commitment under the Act.  Id.  If the judge determines the
existence of probable cause that the individual is a sexually

that the defendants have violated his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution by failing to formulate or adopt "a policy for the treatment of Transgender People within the Florida Civil Commitment Center." (Doc. 1 at 2).  The allegations of, and attachments to, the complaint state the following:[3]

Plaintiff had been a resident at the FCCC since October 1, 2000 (Doc. 1 at 1).  Since January of 2001, he has filed numerous grievances requesting treatment for Gender Identity Disorder ("GID").  Even though DCF knew of Plaintiff's diagnosis of GID prior to October of 2000, it has ignored Plaintiff's "serious medical need" and has "refused to provide _any_ form of therapy for

_____

violent predator, then he or she will order the individual to remain in custody. Id. at § 394.915.  Thereafter, a jury trial, or a bench trial if neither party requests a jury trial, will commence. Id.  If the jury finds the individual to be a sexually violent predator by clear and convincing evidence, then the individual will be committed to the custody of the Department of Children and Family Services for "control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Id. at § 394.917.

[3] The court may consider documents attached to the complaint or directly referenced in the complaint as part of the complaint. See Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000); Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1368-69 (11th Cir. 1997); Solis-Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985) (Attachments to the complaint "are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion."); Fed. R. Civ. P. 10(c) ("A copy of a written instrument filed as an exhibit to a pleading is a part thereof for all purposes[.]").

the Plaintiff's Serious Medical Condition of Gender Identity Disorder (GID)." Id. at 3 (emphasis in original).

Plaintiff wrote to Defendant Secretary David Wilkins and inquired as to whether DCF had a policy for treatment of transgender residents (Doc. 1 at 1-2). Defendant Wilkins did not express concern for Plaintiff's condition. Id. Rather, Petitioner received a letter from Defendant Montaldi who informed Plaintiff that DCF did not have a specific policy for transgender treatment and services (Ex. A at 26). Plaintiff has sought outside assistance for his problems (Doc. 1 at 4).

Plaintiff has attached numerous documents to his complaint. (Ex. A; Ex. B; Ex. C). Plaintiff submitted grievances to the FCCC in which he requested that he be placed on anti-androgen treatment in contemplation of sex reassignment surgery (Ex. A at 1-21). In the FCCC's responses to these requests, Plaintiff was referred to medical professionals to discuss his concerns. Id. at 1-2, 12, 13, 20, 21. However, Plaintiff's treatment was delayed due to a pending charge for possession of child pornography. The FCCC determined that it was best not to begin any treatment until the charges were resolved.[4] Id. at 3, 4, 7, 8.

---

[4] A review of the Florida Department of Corrections website indicates that Plaintiff was sentenced for possession of child pornography on March 4, 2013. He was released from Desoto Annex in Arcadia, Florida on August 21, 2013.

Plaintiff wrote a letter the Department of Children and Families in which he complained that he wished to begin receiving hormone therapy; wished to be addressed by his female name; and wanted the FCCC to hire a therapist who specialized in transgender issues to aid him in making the transition to a female (Ex. A at 22). He also requested that the FCCC provide him with the appropriate hormones, female clothing, and feminine products from an English company that specialized in transgender products (Ex. A at 22-23). In response, Plaintiff was advised that the hormone treatment and therapy he requested was not part of the comprehensive treatment plan at the FCCC. Id. at 24. Plaintiff was also advised that he had not been diagnosed with gender identity disorder, and therefore, his request for hormonal therapy was not considered appropriate. Id. Plaintiff was told that addressing him by his female name would be "clinically unwise" and that "any authentic female clothing found in any resident possession would be considered as contraband." Id. In response to a follow up letter from Plaintiff, Defendant Montaldi advised Plaintiff that "DCF does not have a policy for transgender treatment and services." Id. at 26.

———————————

http://www.dc.state.fl.us/InmateReleases  As of the date on this Order, Plaintiff has not updated his address with this Court.

Also attached to Plaintiff's complaint are numerous medical reports of his psychiatric evaluations (Ex. B).  In these reports, Plaintiff's medical providers discussed his gender identity issues, but determined that "as [Plaintiff] reports he sometimes feels like a woman and sometimes like a man, this desire [to have his gender surgically altered] does not seem to meet the criteria of persistence necessary for [a diagnosis of Gender Identity Disorder].  Therefore, it may be advisable to consider these feelings part of an unstable sense of identity associated with borderline personality traits." Id. at 18.  Plaintiff's treating medical professionals also indicated that "there does not seem to be any indication for the use of anti-androgen therapy." (Ex. C at 6). Dr. Robert Brotman indicated that Petitioner was "on the verge of being delusional about his gender dysphoria and his extreme need for treatment[.]" Id. at 7.

As relief for Defendants' failure to formulate a specific policy for the treatment of FCCC residents diagnosed with GID, Plaintiff seeks a declaration that his constitutional rights have been violated; an order that Defendants formulate a policy for the treatment of gender nonconforming people in conjunction with the World Professional Association for Transgender Health's Standard of Care; an order that Plaintiff receive hormone therapy, female clothing, feminine cosmetics, feminine hygiene items, and any reasonable transgender accessories he requests; a declaration that

Plaintiff would have been eligible for release from the FCCC had he received treatment for GID; damages for wages he would have received had he been released from FCCC at an earlier date; an order that Plaintiff be allowed to receive, possess, use, and wear female clothing, feminine cosmetics, feminine hygiene items, and other transgender accessories; and any other relief this Court deems just and proper (Doc. 1 at 4).

Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 24, filed July 3, 2013). Defendants assert that Plaintiff has not sufficiently alleged a serious medical condition; that formulating a policy for treatment is a discretionary governmental function; that Plaintiff is attempting to attribute liability to Defendants under an impermissible *respondeat superior* theory; that Defendants are entitled to Eleventh Amendment immunity; and that dismissal on Plaintiff's due process and First Amendment claims is appropriate because Plaintiff has not explained how Defendants violated his due process or First Amendment rights (Doc. 24 at 3-11).

## II.  **Legal Standards**

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed.  La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).  The Court must accept all factual

allegations in Plaintiff's amended complaint as true and take them in the light most favorable to the plaintiff. Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008).   Conclusory allegations, however, are not entitled to a presumption of truth.   Ashcroft v. Iqbal, 556 U.S. 662 (2009)(discussing a Rule 12(b)(6) dismissal); Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

The Court employs the Twombly-Iqbal plausibility standard when reviewing a complaint subject to a motion to dismiss.   Randall v. Scott, 610 F.3d 701, 708, n.2 (11th Cir. 2010).   A claim is plausible if the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Iqbal, 556 U.S. at 678.   The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim.   Bell Atlantic Corp. v. Twombly, 550 U.S. 544 556 (2007); Marsh, 268 F.3d at 1036 n.16.   Thus, "the-defendant-unlawfully harmed me accusation" is insufficient.   Iqbal, 556 U.S. 662, 677.   "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."   Id. (internal modifications omitted).   Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

Because Plaintiff is proceeding *pro se*, the Court construes his complaint more liberally than had it been drafted by an attorney. See <u>Powell v. Lennon</u>, 914 F.2d 1459, 1463 (11th Cir. 1990).

### III. <u>Analysis</u>

> ***a. Plaintiff's claims for damages against the Department of Children and Families and Defendants Wilkins and Montaldi in their official capacities are barred by Eleventh Amendment Immunity***

Plaintiff seeks monetary damages from the defendants for the wages he may have earned over the past ten years had he been treated for GID and released from the FCCC as a result of the treatment (Doc. 1 at 4). In addition to being wholly speculative, damages against defendants as a state agency and state officials acting in their official capacities are barred by the Eleventh Amendment to the United States Constitution.

When filing a suit under 42 U.S.C. § 1983, a person is limited with respect to whom he or she may sue. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States[.]" U.S. Const. amend. XI. The Eleventh Amendment is an absolute bar to a suit by an individual against a state or its agencies in federal court. <u>Edelman v. Jordan</u>, 415 U.S. 651 (1974). Plaintiff sues the Florida

Department of Children and Families, Secretary Wilkins, and SVPP Administrator Montaldi.[5]

The Florida Department of Children and Family Services (DCF) is a state agency, see Fla. Stat. § 20.19, which is the re-designation of the Florida Department of Health and Rehabilitative Services, an agency of the State of Florida. Doe, 1-13 ex rel., Doe Sr. 1-13 v. Bush, 261 F.3d 1037, 1042 n.2 (11th Cir. 2001), cert. denied, 534 U.S. 1104 (2002). Accordingly, Plaintiff may not bring this § 1983 action against the Florida Department of Children and Families. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.")(citations

---

[5] Plaintiff does not state whether he sues Defendants Wilkins and Montaldi in their individual or official capacities. A review of the complaint and the relief sought indicates that Plaintiff intended to sue these defendants in both their official and individual capacities. See Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. The course of proceedings in such cases typically will indicate the nature of the liability sought to be imposed." (internal citations omitted)).

omitted).   The  Eleventh  Circuit  has  held  that  the  Florida
Department  of  Health  and  Rehabilitative  Services  is  immune  under
the  Eleventh  Amendment  from  a  damage  suit  in  federal  court.   <u>Gamble
v. Fla. Dep't of Health & Rehabilitative Servs.</u>, 779 F.2d 1509,
1513  (11th  Cir.  1986).   Accordingly,  the  Motion  to  Dismiss  will
be  granted  with  prejudice  as  to  the  Department  of  Children  and
Family  Services  because  the  claims  for  damages  are  barred  by  the
Eleventh  Amendment.

Moreover,  under  federal  law,  suing  a  person  in  his  official
capacity  is  simply  an  alternative  method  of  suing  the  government
entity  itself.   "Obviously,  state  officials  literally  are  persons.
But  a  suit  against  a  state  official  in  his  or  her  official  capacity
is  not  a  suit  against  the  official  but  rather  is  a  suit  against
the  official's  office."  <u>Will</u>,  491  U.S.  at  71.   Thus,  if  a  suit
against  the  government  entity  is  barred,  the  suit  against  the
official  in  his  official  capacity  is  also  barred.   Accordingly,
the  Motion  to  Dismiss  will  be  granted  as  to  claims  for  damages
against  defendants  Wilkins  and  Montaldi  in  their  official
capacities.

> b. ***Plaintiff's   claims   for   declaratory   and
>     injunctive  relief  are  barred  by  Eleventh
>     Amendment  Immunity  against  the  Department  of
>     Children and Families but are not barred by the
>     Eleventh  Amendment  against  Defendants  Wilkins
>     and Montaldi in their official capacities***

Plaintiff also seeks declaratory relief as to the unlawfulness of the lack of an official policy, and seeks various mandatory injunctive relief.  The Eleventh Amendment also bars suits for declaratory and injunctive relief against a state and its agencies. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-03 (1984).  Therefore, this aspect of the Complaint against the DCF will also be dismissed with prejudice.

A significant exception to this Eleventh Amendment immunity was announced in Ex Parte Young, 209 U.S. 123 (1908).  In Young, the Supreme Court determined that a plaintiff may seek to enjoin ongoing unconstitutional state action by naming the responsible state officer in the complaint and requesting that the officer be enjoined from further unconstitutional conduct. Gamble, 779 F.2d at 1511.  The inquiry as to whether the suit lies under Ex parte Young does not include an analysis of the merits of the claim. Verizon Maryland, Inc. v. Public Service Comm'n of Maryland, 535 U.S. 635, 646 (2002).  Therefore, to the extent that he seeks only prospective injunctive and declaratory relief, Plaintiff's official capacity claims against Defendants Wilkins and Montaldi are not barred by the Eleventh Amendment.  The Motion to Dismiss is denied as to this ground.

> c. *Plaintiff's Eighth and Fourteenth Amendment claims against Defendants Wilkins and Montaldi are dismissed for failure to state a claim upon which relief may be granted*

Plaintiff's right to receive adequate health care derives from a prisoner's constitutional rights embodied in the Eighth Amendment's prohibition against cruel and unusual punishment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Estelle v. Gamble, 429 U.S. 97 (1976). The Supreme Court has concluded that, as a general rule, civil detainees are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romero, 457 U.S. 307, 322 (1982). Indeed, the involuntarily civilly committed have liberty interests under the due process clause of the Fourteenth Amendment to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as might be required to ensure safety and freedom from restraint. Id. The Eleventh Circuit similarly has held that "Youngberg establishes that the due process rights of the involuntarily civilly committed are 'at least as extensive' as the Eighth Amendment 'rights of the criminally institutionalized,' and therefore, 'relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed.'" Lavender v. Kearney, 206 F. App'x 860, *2 (11th Cir. 2006) (footnote omitted)(quoting Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996)). Therefore, the case law that has developed under the

Eighth Amendment sets forth the contours of the due process rights of the civilly committed. Id.

The prohibition against cruel and unusual punishment has been interpreted by the Supreme Court as prohibiting "the unnecessary and wanton infliction of pain[.]" Hudson v. McMillian, 503 U.S. 1 (1992) (reversing decision of court of appeals, which held that inmate could not prevail on his claim of cruel and unusual punishment against corrections officers).  Under this standard, an inmate who claims a violation of the Eighth Amendment on the basis of an official's failure to provide necessary medical treatment must show that (1) his medical needs were serious;[6] and (2) the defendants' failure to attend to his medical needs rose to the level of deliberate indifference. McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999).

Plaintiff does not allege a constitutional violation based on Wilkins' or Montaldi's personal refusals to treat his GID.  To the extent Plaintiff complains that the medical professionals at the

---

[6] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  For the sake of this Order only, the Court will assume, without deciding that Gender Identity Disorder is a serious medical need that would pose a substantial risk of serious harm if left untreated. See Praylor v. Texas Dep't of Criminal Justice, 430 F.3d 1208 (5th Cir. 2005)(acknowledging that transsexualism may be a serious medical condition).

FCCC failed to adequately diagnose and treat his GID, the claim is based on the actions and decisions of the FCCC staff who are not named as defendants in this action.  Any attempt to hold Wilkins and Montaldi liable for the actions of their subordinates is insufficient to state a claims under § 1983.

A defendant cannot be held liable under § 1983 based solely on the theory of *respondeat superior* or vicarious liability. Hyland v. Kolhage, 267 F. App'x 836, 841 (11th Cir. 2008); Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).  Supervisory liability can be established only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007)(internal quotations omitted).  When determining whether there is a causal connection between a defendant's action and the alleged deprivation of a constitutional right, mere knowledge of a potential deprivation is not sufficient to impose liability on a supervisor. Iqbal, 556 U.S. at 677.  Rather, in order to state a claim against the supervisor, the plaintiff must allege purposeful action by the supervisor to deprive plaintiff of a constitutional right. Id.  At no point in his complaint does Plaintiff allege that Wilkins or Montaldi personally participated in an active plan to deny him treatment for GID.

Because Plaintiff cannot state a claim against Wilkins or Montaldi by showing purposeful participation, he attempts to show a causal connection to his constitutional deprivation through other means.  A plaintiff can do this by demonstrating either that "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or that "a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff attempts to attribute liability to Wilkins and Montaldi based upon the fact that DCF does not have a formal policy for the treatment of transgender residents at the FCCC.  In order to establish deliberate indifference on the part of a defendant, a plaintiff must show subjective knowledge of a risk of serious harm and disregard of that risk by conduct that is more than gross negligence. Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010) (internal quotation marks and alteration omitted).  To establish the "subjective knowledge" component of this requirement, the Eleventh Circuit has recognized that a defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

- 16 -

actually draw the inference. Bozeman v. Orum, 422 F.3d at 1265, 1272 (11th Cir. 2005).  Plaintiff has failed to sufficiently plead the "subjective knowledge" portion of his Eighth Amendment claim.

In order for a substantial risk of serious harm to exist, the conditions must be "sure or very likely to cause serious illness and needless suffering" and give rise to "sufficiently imminent dangers." Baze v. Rees, 553 U.S. 35, 49–50 (2008).  DCF's failure to have a formal policy for the treatment of transgender individuals does not, alone, pose a significant danger to a resident's health and safety, and does not amount to a condition that causes "unquestioned and serious deprivation of basic human needs." Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981). Significantly, Plaintiff does not allege that DCF or the FCCC had a policy of refusing to treat transgender individuals if a resident was so diagnosed or that treatment for his condition would not have been approved had a treating specialist ordered it.  Rather, the documents attached to the complaint show that medical providers at the FCCC did not feel that such treatment was indicated for Plaintiff.  See Ex. C at 5-7 (Progress notes of treating physician Robert K. Brotman from August 20, 2010 through October 26, 2010, stating that anti-androgen therapy is not appropriate for Plaintiff); Ex. A at 3, 4, 7 (informing Plaintiff that his uncertain legal status made him a poor candidate for hormone

therapy because his treatment was likely to be interrupted).[7] Accordingly, Petitioner has not alleged facts from which the defendants should have inferred that their failure to formulate a policy for the treatment of GID would result in substantial risk of serious harm to Plaintiff.

Moreover, although Plaintiff alleges that he has been diagnosed with GID "since before [his] arrival at the FCCC on October 1, 2000," the numerous documents attached to Plaintiff's complaint indicate that the mental health practitioners at the FCCC disagreed with that diagnosis. In a May 11, 2005 report by clinical therapist Larry Zolman, it was recommended that based upon the information from the clinical interview, Department of Correction files, psychological assessments, and direct observations, Plaintiff should participate in a sex offender specific group intervention to discuss Plaintiff's reports of gender dysphoria. The report noted that "[t]he fact that Mr. Hood reports sometimes feeling like a man and sometimes like a woman rather than like a woman all the time seems to indicate that his symptoms may be more a function of a[n] unstable sense of self commonly associated with Borderline personality traits rather than

---

[7] When there is a conflict between the allegations in a pleading and exhibits thereto, it is well settled that the exhibits control. Crenshaw v. Lister, 556 F.3d 1283 (11th Cir. 2009).

an actual Gender Identity Disorder." (Ex. C at 21).  On December 22, 2011, Plaintiff was informed by a spokesperson for DCF's Sexually Violent Predator Program that Plaintiff had not been diagnosed with gender identity disorder and therefore, his request for hormonal therapy was not considered appropriate (Ex. A at 24). The exhibits submitted with the complaint indicate that the defendants did not actually draw an inference that Plaintiff suffered from GID or was at risk of a substantial risk of serious harm.

Finally, even if the defendants should have inferred that Plaintiff was at a substantial risk of serious harm if they did not develop a formal policy for the treatment of transgender residents at the FCCC, Plaintiff has not alleged that the defendant's actions were more blameworthy than mere negligence. Farmer, 511 U.S. at 836 n. 4 (stating that even gross negligence does not rise to the level of deliberate indifference).  An action by a defendant with no signs of malevolence or a culpable state of mind does not give rise to an Eighth Amendment violation. Baze, 553 U.S. at 50.

Petitioner has failed to establish deliberate indifference on the parts of Defendants Wilkins or Montaldi, and the Eighth and Fourteenth Amendment claims against these defendants are dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

### d. Plaintiff's First Amendment claims are dismissed for failure to state a claim upon which relief may be granted

Plaintiff asserts that his First Amendment right to freedom of expression has been violated (Doc. 1 at 3).  Plaintiff does not elaborate on this allegation, but construing the *pro se* complaint liberally, the Court will interpret the claim as one asserting that Plaintiff's First Amendment right to freedom of expression have been violated because of the FCCC's restriction on male residents wearing female clothing, feminine cosmetics, feminine hygiene items, and other "transgender accessories." Id. at 4.

As discussed, Defendants Wilkins and Montaldi are not responsible on a theory of *respondeat superior* for the allegedly unconstitutional actions of the staff at the FCCC. See discussion supra Part III(b).  To the extent that Plaintiff now alleges that Wilkins and Montaldi were responsible for an FCCC policy prohibiting transgender residents from wearing female clothing and cosmetics, the claim fails.

While prisoners do not lose their First Amendment rights upon incarceration, see Meachum v. Fano, 427 U.S. 215, 225 (1976), an inmate's rights are subject to restriction.[8]  "[A] prison inmate

---

[8] Although Plaintiff is not a prisoner, the Court finds the context in which he is civilly detained should be afforded significant consideration in this case.  The law generally requires a careful balancing of the rights of individuals who are detained for treatment, not punishment, against the state's

retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). "Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights[.]" Bell v. Wolfish, 441 U.S. 520, 547 (1979). Federal judges may not interfere in the daily administration of state prisons barring substantial evidence that they have acted disproportionately to correctional needs. Pell, 417 U.S. at 827.

Plaintiff does not point to any specific clothing policy at the FCCC. However, for the purposes of this opinion, the Court will assume that some policy exists and that the policy prohibits male residents at the FCCC from wearing or possessing clothing designed for females. When a challenged prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is "reasonably related" to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987); Pesci v. Budz,

---

interests in institutional security and the safety of those housed at the facility. Thus, while Plaintiff as a civil detainee may not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536(1979), he nonetheless may be subjected to conditions within the bounds of professional discretion that place restrictions on his personal freedoms. Youngberg, 457 U.S. at 321-22.

730 F.3d 1291 (11th Cir. 2013) (finding that the Supreme Court's Turner test applicable to the FCCC).

When Plaintiff requested that the FCCC "purchase and allow [him] to wear all of the female clothing and feminine products" he wanted (Ex. A at 23), Plaintiff was informed that it was clinically unwise for him to be addressed by a female name and that, because all the residents at the FCCC were male, female clothing was prohibited (Ex. A at 24).  Plaintiff was provided a rational, non-arbitrary basis for regulating resident attire and restricting Plaintiff to the use of his legal name.  Moreover, accommodation of Plaintiff's right to wear female clothing and cosmetics would be unduly burdensome for FCCC officials.

Even assuming that Plaintiff has been diagnosed with GID, an assumption that is not supported by the exhibits attached to Plaintiff's complaint, the Court has no found authority indicating that a transgender person has the right to choose the clothing worn while confined or that the facility is constitutionally obligated to purchase all the clothing and feminine products requested.  In fact, generally, federal courts have held the opposite. See, e.g., Murray v. United States Bureau of Prisons, 106 F.3d 401 (6th Cir. 1997) (transsexual prisoner not entitled to wear clothing of his choice and prison officials do not violate the Constitution simply because the clothing is not aesthetically pleasing); Star v. Gramley, 815 F. Supp. 276 (C.D. Ill. 1993)

(noting that provision of female clothing to transsexual prisoner would be unduly burdensome for prison officials and would make little fiscal sense); <u>Jones v. Warden of Stateville Corr. Ctr.</u>, 918 F. Supp. 1142 (N.D. Ill. 1995) ("Neither the Equal Protection Clause nor the First Amendment arguably accord [Plaintiff] the right of access to women's clothing while confined in a state prison."). The First Amendment claims against Defendants Wilkins and Montaldi are dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

Accordingly, it is hereby **ORDERED**:

The defendants' motion to dismiss Plaintiff's complaint (Doc. 24) is **GRANTED IN PART AND DENIED IN PART**. The Complaint is dismissed with prejudice as to the Department of Children and Families; without prejudice as to David E. Wilkins and Daniel Montaldi in their individual capacities; and is denied as to David E. Wilkins and Daniel Montaldi in their official capacity in connection with the request for declaratory and injunctive relief.

**DONE** and **ORDERED** in Fort Myers, Florida on February 26th, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA:  OrlP-4 11/29
Copies: Ronald C. Hood
Counsel of Record